IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS R. CORNWELL, Individually, and as Personal Representative of the Estate of RENIA A. CORNWELL, Deceased,<br><br>          Plaintiff,<br><br>Vs.<br><br>UNION PACIFIC RAILROAD CO. A Delaware Corporation,<br><br>          Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 4:08-cv-00638-JHP-TLW<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT UNION PACIFIC RAILROAD CO.'S *DAUBERT*
MOTION REGARDING ROBERT PAINTER**

COMES NOW the Defendant, Union Pacific Railroad Company ("Union Pacific"), by and through its attorneys of record, Gibbs, Armstrong, Borochoff, Mullican & Hart, P.C., and for its *Daubert* Motion Regarding Robert Painter ("Painter"), expert witness for Plaintiff, shows the Court as follows:

**PRELIMINARY STATEMENT**

This Motion is being brought in the alternative, as Union Pacific has contemporaneously filed a Motion to Strike regarding this witness for the reasons set forth therein.

Painter has been hired by Plaintiff as an accident reconstrucitonist in this case. In order to conduct his investigation, Painter relied on a report generated by Robert Schubert ("Schubert") at Git 'R' Done Investigations. *See* Exhibit 1, Expert Report of Robert Painter dated June 25, 2010, p. 12. Schubert's report was generated due to Schubert's unlawful trespass onto the property of Union Pacific. Further, Painter himself trespassed on Union Pacific property in order to conduct his reconstruction. *See* Exhibit 1, p. 3. Neither Painter nor Plaintiff's counsel sought

1

permission from Union Pacific to enter onto, measure, survey, photograph and videotape Union Pacific's property, and as such, Plaintiff should not be allowed to present witnesses who will testify based on evidence which they unlawfully obtained.

Further, the methodology employed by Painter is patently unreliable. Painter also assumed facts not in evidence in order to conduct his investigation, and as such, his investigation depends solely on speculation. He likewise did not account for obvious facts regarding the presence of the train at the crossing. This flawed methodology and the insufficient factual basis trigger the Court's evidentiary gate-keeping responsibilities found in *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

### BRIEF FACTUAL STATEMENT

1. This case arises out of a collision which occurred on July 16, 2008 between a Union Pacific train and an automobile driven my Renia Cornwell. Mrs. Cornwell died as a result of the collision.

2. Painter has conducted an accident reconstruction for Plaintiff which relies on the accident investigation generated by Robert Schubert.[1] *See* Exhibit 1, p. 12.

### ARGUMENTS AND AUTHORITIES

#### I. The Court's Gate-Keeping Role

Federal Rule of Evidence 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify

---

[1] Robert Schubert's investigation was conducted on June 13, 2010 and submitted to Plaintiff's counsel on June 16, 2010. On June 18, 2010, Plaintiff filed a Motion [Dkt. No. 155] for another extension of time to file his Surreply to Plaintiff's Motion for Summary Judgment and his Response to Plaintiff's Motion to Strike. The sole reason provided for the extension was that Plaintiff's counsel needed time to review additional materials with Plaintiff's expert witnesses. Plaintiff's counsel received Painter's Expert Report on Friday, June 25, 2010 (*See* Exhibit 1, p. 1) and Plaintiff's aforementioned Surreply and Response were filed shortly after midnight on Tuesday, June 29, 2010. Plaintiff failed to mention the investigations and reports being generated by Schubert and Painter in his June 18th Motion for Extension of Time.

> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court defined the trial court's role in this evidentiary process in *Daubert* by holding that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589 and 597. The Supreme Court built upon this holding in *Kumho Tire Co., Ltd. v. Carmichael*, finding that *Daubert*'s general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. 137, 141 (1999) (citing FED. R. EVID. 702).

This Court is charged with a gatekeeping responsibility to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Kumho,* supra at 141. As a consequence, the Court must, before accepting the testimony and opinion of an expert witness, determine whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation. *Kumho,* 526 U.S. at 141, and *Daubert*, 509 U.S. at 589–90. If that testimony is speculative, it does not constitute competent proof, and cannot be said to contribute to a "legally sufficient evidentiary basis" for its admission. *Weisgram v. Marley Co.,* 528 U.S. 440, 454, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000). Against this backdrop, this Court must scrutinize the opinions of Painter.

## II. Painter Obtained his Investigative Data Unlawfully

On June 13, 2010, Schubert, along with Plaintiff's counsel, conducted an accident recreation/investigation. This investigation and the report generated by Schubert were done for the benefit of Painter, who relies on Schubert's investigation in forming his opinions. *See* Exhibit 1, p.11. Painter likewise went to the crossing on June 9 and 10, 2010, where he took

pictures, made measurements, made videos of the subject crossing, inspected the property and conducted other such activities for his reconstruction.  *See* Exhibit 1, p. 2.

The railroad track and the accompanying right-of-way are the property of Union Pacific. Painter did not have permission to be on Union Pacific's property, nor was such permission sought prior to conducting this investigation as is required by Fed.R.Civ.Pr. 26(a)(2), despite the fact that such permission would have been readily granted, subject to certain safety protocols. As such, Painter was unlawfully trespassing on Union Pacific property.

Rule 26(a)(2) provides that a party may serve a request on another party "to permit entry onto designated land…possessed or controlled by the responding property, so that the requesting party may inspect, measure, survey, photograph, test or sample the property."  No such request was served on Union Pacific.  As such, Painter trespassing on Union Pacific property.  *Frank v. Mayberry*, 199 OK 63, 985 P.2d 773.

"A party is not entitled to trespass upon another party's property to conduct an investigation or inspection without first notifying the other party by properly serving a request to produce or filing a motion to produce."  *Schenk, et a. v. Halliday Real Estate, Inc., et al*, 803 S.W.2d 361, 372 (Tex. App. – Fort Worth 1990)(interpreting a Texas Rule of Civil Procedure modeled after Rule 26(a)(2).  The proper sanction is to exclude such expert's report and any testimony in any way related to the trespass as an abuse of discovery.  *Id*.  Here, Painter's testimony and report are doubly-tainted, since not only did Painter trespass, but he relied on Schubert's report which is likewise tainted by Schubert's unlawful trespass. Union Pacific therefore requests that this Court exclude Painter's report and testimony, as it was acquired by unlawful means.

### III.     Painter's Opinions are Unreliable and Speculative

According to Rule 702 of the Federal Rules of Evidence, the trial court, as gatekeeper, must ensure that any and all scientific evidence is relevant and reliable, and assists the trier of fact before admitting it at trial. *Daubert*, supra. Moreover, the burden of establishing admissibility rests with the party proffering the expert's testimony. *Dukes v. Illinois Cent. R.R.Co.*, 934 F.Supp., 946 (N.D. Ill. 1996) (citation omitted).

Rule 702 establishes a two-prong test to determine the admissibility of an expert's testimony: (1) the reasoning and methodology underlying the testimony must be scientifically reliable; and (2) the methodology must be applicable to the facts of the case at bar. *Daubert*, 509 U.S. at 589-93. In addressing the principles enunciated in *Daubert*, the Tenth Circuit recognized that "[t]he plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)(citing Daubert, 509 U.S. at 590). Moreover, under Rule 702, admissible expert testimony "must be based on actual knowledge and not subjective belief or unsupported speculation." Mitchell, 165 F.3d at 780. Painter's proffered testimony fails the *Daubert* test because it is not scientifically reliable and it speculates as to matters with no factual basis. As such, this testimony should be excluded.

Under *Daubert*, this court should consider whether an expert has reviewed relevant information before forming an opinion. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502-03 (9th Cir.1994) ("Coming to a firm conclusion first and then doing research to support it is the antithesis of this [scientific] method."). Federal courts have ruled expert testimony inadmissible where an expert fails to rule out other potential causes. See, e.g., *Cloud v. Pfizer, Inc.*, 198

5

Painter gives no credence to the basic fact that the decedent was driving on Flint Avenue prior to the collision, and did not begin her journey that day immediately in front of the crossing. He attempts to mask this flaw by claiming that buildings not owned by Union Pacific and a fence with vegetation on it also not owned by Union Pacific restricted visibility. *See* Exhibit 1. This fence is 100 feet from Union Pacific's track and the buildings are even further away, which means Painter is claiming that her visibility was restricted by buildings and vegetation well outside of the sight triangle Union Pacific is required by law to keep free of obstructions. *Seei* OAC 165:32-1-3. He further claims that trees 380 feet from the crossing (by his own calculations) somehow blocked decedent's ability to view the train. *See* Exhibit 1. Again, Painter is relying on obstructions well outside of the sight triangle, which is not only unreliable, but highly prejudicial in that in implies to the jury that Union Pacific has a legal duty greater than that which has been prescribed by law, including somehow exercising dominion over property it does not own.

The flaw in this methodology is that it does not account for any of the time when the decedent was approaching the crossing other than immediately before the collision. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert*

<u>supra</u>.

The analytical gap widens upon consideration of Painter's claim that the visual cues for an approaching train are the lights on the lead locomotive. Painter further opines that this visual cue was blocked by the signal house at the crossing. While lights are undoubtedly important, the obvious visual clue of an approaching train at approximately noontime in the middle of July is not the lights on the train, but the train itself, especially when there is 380 feet of the train in full view (the trees Painter claims "masked" the train were 380 feet away). The long line of railcars can be seen in the pictures Painter relies on. *See* Exhibit 1 (Union Pacific apologizes for the poor quality of the pictures, but that is what was provided Union Pacific); *see also* Exhibit 4.

In order to reach this opinion, Painter has to engage in rank speculation as to what the decedent was doing as she approached the crossing, and for how long. Painter speculates that as the decedent approached the crossing, she likely took 2.5 seconds to look to her right. There is no sufficient evidentiary basis for this opinion, as nobody knows what decedent was doing as she approached the crossing. Further, it defies common sense to think that the decedent would spend 2.5 seconds looking to her right as a football field worth of the train was plainly visible to her left. Painter obviously came to the conclusion that she could not see the train, and in working backwards from this conclusion, was forced to speculate that the decedent was somehow completely ignoring the hundreds of feet of train in front of her on her left side. Painter is not allowed to engage in rank speculation in order to work backwards from a predetermined conclusion. *Claar*, supra; *Kumho*, supra.

Lastly, Painter throws in an opinion as to the presence of the horn on the TIR. Without any specialized training or knowledge in acoustics or TIR interpretation, Painter's opinion in this regards is a layman's opinion which invades the province of the jury in analyzing the evidence before them. *Grayson v. Williams*, 256 F.2d 61 (10th Cir. 1958) (expert testimony is inadmissible in cases in which normal experience and qualification of laymen jurors enables them to draw proper conclusions from the given facts). Painter likewise did not review all of the witness depositions in this case, and thus cannot opine on matters when he has not reviewed sufficient facts. *Daubert*, supra; *Claar*, supra.

There are simply too many analytical gaps in Painter's opinions for them to be reliable or helpful to the jury. *Joiner*, supra. Further, in order to work backwards from his conclusions, Painter engages in rank speculation. *Claar*, supra; *Kumho*, supra. This Court should therefore exercise its gatekeeping role under *Daubert* and strike Painter's testimony.

8

## CONCLUSION

Painter's report and testimony are based on information he and Schubert both unlawfully obtained by trespassing on Union Pacific's property without requesting permission to do so under Rule 26(a)(2). Further, the rank speculation and analytical gaps present in his opinion render it unreliable and inadmissible. As such, his testimony should be stricken under *Daubert*.

WHEREFORE, premises considered, the Defendant Union Pacific Railroad Co. respectfully requests that this Court enter an Order striking any expert opinion testimony offered by Robert Painter.

Respectfully submitted,

**GIBBS, ARMSTRONG, BOROCHOFF,
   MULLICAN & HART, P.C.**


_____/s/Michael P. Womack_____
Robert D. Hart, OBA #16358
Michael P. Womack, OBA #20895
601 South Boulder Avenue, Suite 500
Tulsa, Oklahoma 74119
Telephone (918) 587-3939
Facsimile (918) 582-5504
**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF DELIVERY**

I hereby certify that on the 16th day of July, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

John M. Merritt
MERRITT & ASSOCIATES, P.C.
P.O. Box 1377
Oklahoma City, OK  73101
Telephone:  405-236-2222
Facsimile:  405-232-8630
Docket.clerk@merrittfirm.com

                _____/s/Michael P. Womack_____