IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENNIS R. CORNWELL, Individually, ) <br> and as Personal Representative of the ) <br> Estate of RENIA A. CORNWELL, ) <br> Deceased, ) <br> ) <br> Plaintiff, ) <br> ) <br> Vs. ) <br> ) <br> UNION PACIFIC RAILROAD CO. ) <br> A Delaware Corporation, ) <br> ) <br> Defendant, ) | Case No. 4:08-cv-00638-JHP-TLW |

**DEFENDANT UNION PACIFIC RAILROAD CO.'S *DAUBERT*
MOTION REGARDING ROBERT SCHUBERT**

COMES NOW the Defendant, Union Pacific Railroad Company ("Union Pacific"), by and through its attorneys of record, Gibbs, Armstrong, Borochoff, Mullican & Hart, P.C., and for its *Daubert* Motion Regarding Robert Schubert ("Schubert"), expert witness for Plaintiff, shows the Court as follows:

**PRELIMINARY STATEMENT**

This Motion is being brought in the alternative, as Union Pacific has contemporaneously filed a Motion to Strike regarding this witness for the reasons set forth therein.

Schubert has performed an accident recreation/investigation for Plaintiff in this case through his company, Git [sic] 'R' Done Investigations. *See* Exhibit 1, Schubert's Report. Plaintiff's counsel indicated on the facsimile cover sheet that such was report was a "Fact Witness Report." *See* Exhibit 1, p. 1.  However, Schubert purports to be a private investigator and was retained for his specialized knowledge as a private investigator.  Union Pacific doubts that Schubert was performing this work for free, and assumes he was retained and compensated

1

for his work on this case. Further, he submitted a report, as an expert witness would do. As such, Union Pacific will treat Schubert as an expert witness, not as a fact witness.

Schubert trespassed on Union Pacific property in order to conduct his investigation, putting his life in danger in the process. Data gathered through unlawful means should be excluded. The methodology employed by Schubert is patently unreliable. Further, Schubert assumed facts not in evidence in order to conduct his investigation, and as such, his investigation depends solely on speculation. This flawed methodology and the insufficient factual basis trigger the Court's evidentiary gate-keeping responsibilities found in *Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## BRIEF FACTUAL STATEMENT

1.  This case arises out of a collision which occurred on July 16, 2008 between a Union Pacific train and an automobile driven my Renia Cornwell. Mrs. Cornwell died as a result of the collision.

2.  Schubert has conducted an accident recreation/investigation for Plaintiff[1].

## ARGUMENTS AND AUTHORITIES

### I. The Court's Gate-Keeping Role

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

---

[1] Robert Schubert's investigation was conducted on June 13, 2010 and submitted to Plaintiff's counsel on June 16, 2010. On June 18, 2010, Plaintiff filed a Motion [Dkt. No. 155] for another extension of time to file his Surreply to Plaintiff's Motion for Summary Judgment and his Response to Plaintiff's Motion to Strike. The sole reason provided for the extension was that Plaintiff's counsel needed time to review additional materials with Plaintiff's expert witnesses. Plaintiff's counsel received Painter's Expert Report on Friday, June 25, 2010 (*See* Exhibit 1, p. 1) and Plaintiff's aforementioned Surreply and Response were filed shortly after midnight on Tuesday, June 29, 2010. Plaintiff failed to mention the investigations and reports being generated by Schubert and Painter in his June 18th Motion for Extension of Time.

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court defined the trial court's role in this evidentiary process in *Daubert* by holding that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589 and 597. The Supreme Court built upon this holding in *Kumho Tire Co., Ltd. v. Carmichael*, finding that *Daubert*'s general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. 137, 141 (1999) (citing FED. R. EVID. 702).

This Court is charged with a gatekeeping responsibility to "ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Kumho,* supra at 141. As a consequence, the Court must, before accepting the testimony and opinion of an expert witness, determine whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation. *Kumho,* 526 U.S. at 141, and *Daubert*, 509 U.S. at 589–90. If that testimony is speculative, it does not constitute competent proof, and cannot be said to contribute to a "legally sufficient evidentiary basis" for its admission. *Weisgram v. Marley Co.,* 528 U.S. 440, 454, 120 S.Ct. 1011, 145 L.Ed.2d 958 (2000). Against this backdrop, this Court must scrutinize the opinions of Schubert.

## II.     Schubert Obtained his Investigative Data Unlawfully

On June 13, 2010, Schubert, along with Plaintiff's counsel, conducted an accident recreation/investigation. The first thing Schubert did upon arriving at the subject crossing was to begin setting up colored cards along the railroad track. The railroad track and the accompanying right-of-way are the property of Union Pacific. Schubert did not have permission to be on Union Pacific's property, much less to erect placards on Union Pacific's property, nor was such

3

permission sought prior to conducting this investigation as is required by Fed.R.Civ.Pr. 26(a)(2) despite the fact that such permission would have been readily granted, subject to certain safety protocols. Schubert was therefore unlawfully trespassing on Union Pacific property. *Frank v. Mayberry*, 199 OK 63, 985 P.2d 773.

Rule 26(a)(2) provides that a party may serve a request on another party "to permit entry onto designated land…possessed or controlled by the responding property, so that the requesting party may inspect, measure, survey, photograph, test or sample the property." No such request was served on Union Pacific, despite the minimal effort to serve such request. As such, Schubert and Plaintiff's counsel were trespassing on Union Pacific property. *Frank v. Mayberry*, 199 OK 63, 985 P.2d 773.

"A party is not entitled to trespass upon another party's property to conduct an investigation or inspection without first notifying the other party by properly serving a request to produce or filing a motion to produce." *Schenk, et a. v. Halliday Real Estate, Inc., et al*, 803 S.W.2d 361, 372 (Tex. App. – Fort Worth 1990) (interpreting a Texas Rule of Civil Procedure modeled after Rule 26(a)(2). The proper sanction is to exclude such expert's report and any testimony in any way related to the trespass as an abuse of discovery. *Id*. Union Pacific therefore requests that this Court exclude Schubert's report and testimony, as it was acquired by unlawful means.[2]

### III.   Schubert's Report and Testimony does not meet *Daubert* Requirements

In order to be admissible under *Daubert*, an expert's testimony must be scientifically reliable and based on a legally sufficient evidentiary basis, not just rank speculation. Here,

---

[2] While this evidence should be excluded on such grounds, the more important aspect of this situation is that by trespassing on Union Pacific property and erecting obstructions along the track, Schubert was endangering the public as well as himself. Every year, people are injured, maimed or killed due to trespassing on railroad property. No lawsuit or litigation investigation is worth potentially paying such a price, nor is it acceptable for anyone to erect obstructions which endanger the general public for the sake of a lawsuit investigation.

4

Schubert's methodology is not scientifically reliable and speculates as to several facts which are not in evidence.

To start, the investigation, which purported to recreate what the decedent would have seen at the time of the accident, was done with a 2010 Chrysler Town and Country Vehicle. The decedent was driving a 1998 Chevrolet Blazer. *See* Complaint, ¶11 [Dkt. No. 1]. Likewise, there is no indication as to what sort of lead locomotive was observed during the investigation, and whether it was the same size and of the same make and model as the lead locomotive in the subject collision. The investigation is thus premised on a comparison between different cars and likely different locomotives, and is thus not scientifically reliable under *Daubert*.

A video camera was placed in the driver's side of the 2010 Chrysler to "show the view a driver would have had of the approaching train." *See* Exhibit 1, p. 2. The problem with this methodology is two-fold. First, video cameras have limited vantage points which do not account for the peripheral vision that humans possess. Second, it assumes that the person operating the video camera is replicating how the decedent was perceiving the crossing at the time of the collision. This assumes facts not in evidence, as nobody can say what the decedent was doing or perceiving at the time of the collision, and as such, is rank speculation. *Kumho,* 526 U.S. at 141, and *Daubert*, 509 U.S. at 589–90.

The 2010 Chrysler was then placed at 35 feet and 38.8 feet to ascertain the view Schubert guesses decedent would have had on the day of the collision. There is no indication how or why or on what basis Schubert chose these distances. It is thus rank speculation. *Kumho,* 526 U.S. at 141, and *Daubert*, 509 U.S. at 589–90.

Lastly, any video created by Schubert would naturally include the lights and gates which are now present at the crossing. To show this to the jury would be highly prejudicial, since any

claim as to the adequacy of the warning devices or for negligent delay in the installation of active warning devices is preempted by federal law, as acknowledged by Plaintiff in his Response to Union Pacific's Motion for Summary Judgment [Dkt. No. 116]. Thus, it appears that Plaintiff is attempting an end-around the preemption doctrine to prejudice the jury with evidence which will show the jury that lights and gates have since been installed, allowing the jury to make inferences which are prohibited by law.

## CONCLUSION

Schubert's report and testimony are based solely on information he unlawfully obtained by trespassing on Union Pacific's property without requesting permission to do so under Rule 26(a)(2). Further, his investigation is riddled with inaccurate comparisons and rank speculation. As such, his testimony should be stricken under *Daubert*.

WHEREFORE, premises considered, the Defendant Union Pacific Railroad Co. respectfully requests that this Court enter an Order striking any expert opinion testimony offered by Robert Schubert.

Respectfully submitted,

**GIBBS, ARMSTRONG, BOROCHOFF,
   MULLICAN & HART, P.C.**


     /s/Michael P. Womack
Robert D. Hart, OBA #16358
Michael P. Womack, OBA #20895
601 South Boulder Avenue, Suite 500
Tulsa, Oklahoma 74119
Telephone (918) 587-3939
Facsimile (918) 582-5504
**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF DELIVERY**

I hereby certify that on the 16th day of July, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

John M. Merritt
MERRITT & ASSOCIATES, P.C.
P.O. Box 1377
Oklahoma City, OK  73101
Telephone:  405-236-2222
Facsimile:  405-232-8630
Docket.clerk@merrittfirm.com

_____/s/_____