**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DENNIS CORNWELL, Individually and as Personal Representative of the Estate of Renia A. Cornwell, Deceased,** )<br>)<br>)<br>) | |
| **Plaintiff,** )<br>) | |
| v. ) | Case No. 08-CV-638-JHP |
| ) | |
| **UNION PACIFIC RAILROAD,** )<br>) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Before the Court is the Defendant's Motion for Summary Judgment [Doc. No. 89], Plaintiff's Response in Opposition [Doc. No. 116], Defendant's Reply [Doc. No. 135] and Plaintiff's Surreply [Doc. No. 158]. The Defendant has also filed two Supplements to its Motion for Summary Judgment [Doc. Nos. 178 and 252] and the Plaintiff has filed a response to the Defendant's Second Supplement [Doc. No. 264]. For the reasons set forth below Defendant's motion is **GRANTED IN PART**, and **DENIED IN PART**.

## BACKGROUND

On July 16, 2008, Renia Cornwell was driving a Chevrolet Blazer which was involved in a collision with a locomotive killing Mrs. Cornwell. The lead locomotive, numbered the UP8130, was owned and operated by Union Pacific Railroad. The collision occurred at the East Flint Street crossing in Vinita, Oklahoma. At the time of the collision, the crossing was protected by advanced warning posts and reflectorized cross bucks. The Plaintiff was cited by the Vinita Police Department for a violation of 47 O.S. §11-403 due to her failure to yield to the oncoming train. The Official Oklahoma Traffic Collision Report states that Plaintiff failed to yield to the train. [Doc. No.

1

89-2] The Vinita Police Department Incident Report states the case was closed due to the "death of offender." [Doc. No. 89-4] The Oklahoma Corporation Commission has defined the "sight triangle" as it relates to a railroad crossing as a triangle "which would have a beginning point from the center point of the main track and the center point of the grade crossing extending along the center of the street of the roadway approach for a distance of 50 feet or to the railroad right-of-way property line, whichever is less, then extend at an angle until arriving at a point on the center of the main track 250 feet from the original beginning point." OAC 165:32-1-2. Present in the sight triangle of the Union Pacific Railroad crossing at issue on the day of the collision were a "signal box and some maintenance and construction equipment." [Doc. No. 89]

The UP8130, the locomotive involved in the collision, was outfitted with the LESLIE RSL-3L-RF horn and twin sealed beam, 32V, 200W headlights. Although the Plaintiff does not dispute the equipment was present on the train, the Plaintiff contends the equipment either was not operable, did not produce the required minimum sound level required by federal regulations, or that the engineer did not sound the horn at the times required by law. The Data Event Recorder from the locomotive shows the horn was blown prior to the collision. The engineer and the conductor both testified that the horn was blown prior to the collision, but the Plaintiff disputes the truthfulness of this testimony. [Doc. Nos. 89-11 and 89-12] Numerous witnesses also testified they were in close proximity of the collision and also heard the whistle blow prior to the collision. [Doc. Nos. 135-6 through 135-15] The Plaintiff also challenges whether these witnesses heard the horn despite their testimony. The Plaintiff has submitted the deposition testimony of two other witnesses, Steve Showalter and Jack Johnson, who testified that they did not hear the horn. Steve Showalter stated he heard the horn blown after the crash but not before. [Doc. No. 116-8] Jack Johnson testified he

2

did not hear the horn at all, although at a later point in his deposition he states he does not remember whether he heard the horn. [Doc. No. 116-9] Dennis Cornwell, the decedent's husband testified in his deposition that at the time of the collision he was approximately 2 miles away at his home working outside. [Doc. No. 116-10] He states he heard the screeching of the train's brakes and the collision, but did not hear the train's horn sound. [Doc. No. 116-10] Data downloaded from the locomotive showed, at the time of the incident with Mrs. Cornwell, the lead locomotive was traveling at a speed of 42 mph and the second and third locomotives were traveling at speeds of 40 mph. Defendant's initial Motion for Summary Judgment stated the track at issue was a Class 3 track and that the speed limit set for Class 3 tracks by the Federal Railroad Administration is 40 mph for freight trains and 60 mph for passenger trains. On April 12, 2010, the Defendant filed a Motion to Substitute the Affidavit of Tom Cooper wherein it stated in Tom Cooper's initial Affidavit attached to its Motion for Summary Judgment, Cooper classified the tracks as Class 3 when they are in fact, class 4. [Doc. No. 137] Class 4 tracks have a maximum speed limit 60 mph. [Doc. No. 137-3]

## **MOTION TO STRIKE**

After the Defendant filed its Motion For Summary Judgment and the Plaintiff filed a brief in response, the Defendant filed a Motion to Strike The Conclusory Affidavits of Plaintiff's Experts Submitted in Support of his Response to Union Pacific Railroad Company's Motion for Summary Judgment [Doc. No. 136] arguing that this Court should strike and refuse to consider the expert declarations submitted by the Plaintiff in support of its response to the summary judgment motion. The Plaintiff responded to the Defendant's Motion to Strike [Doc. No. 156]. This Court also has pending before it, *Daubert* Motions to exclude the testimony of the same experts presented in Defendant's Motion to Strike. This Court finds it can rule on Defendant's Motion for Summary

Judgment without consideration of the expert testimony challenged in Defendant's Motion to Strike and as such, finds it unnecessary to rule on this motion at this time. The Court will consider the admissibility of the challenged expert testimony in a separate ruling on the pending *Daubert* motions.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. *Id*. at 249.

Defendant filed its Motion For Summary Judgment claiming Mrs. Cornwell's negligence *per se* entitles it to summary judgment, that her obstruction claim fails as a matter of law, and that Plaintiff's claims regarding train speed and adequacy of locomotive equipment, improper warning devices and crossing signals fail as a matter of law as they are preempted by federal law. The Plaintiff has stated in his response to the Motion for Summary Judgment that he is not seeking a claim relating to the need for additional warning devices or relating to the instillation of the lights and gates after the collision at issue. The Defendant further sought summary judgment as to the

issue of punitive damages.

**I.      NEGLIGENCE *PER SE***

Union Pacific Railroad argues Mrs. Cornwell violated 47 O.S. §11-701(A) such that the violation amounted to negligence *per se*. In *Hampton v. Hammons,* 1987 OK 77, 743 P.2d 1053, 1056, the Oklahoma Supreme Court explained the elements which must be found before the violation of a statute can be found to be negligence *per se*: (1) the injury must have been caused by the violation, (2) the injury must be of a type intended to be prevented by the ordinance, and (3) the injured party must be one of the class intended to be protected by the statute. *Id.*

Title 47, section 11-701(A) of the Oklahoma Statutes states:

> A.      Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
> 1.     A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
> 2.     A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a railroad train;
> 3.     A railroad train approaching within approximately one thousand five (1,500) hundred feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
> 4.     An approaching railroad train is plainly visible and is in hazardous proximity to such crossing; or
> 5.     The tracks at the crossing are not clear.

The Defendant relies on *Hamilton v. Allen*, 1993 OK 46, 852 P.2d 697, in support of its contention that the Plaintiff violated 47 O.S. §11-701(A) amounting to negligence *per se.* In *Hamilton*, the Court ruled the Plaintiff was negligent *per se* in light of his violation of 47 O.S. §11-

5

701(A), (B). In that case, it was uncontested that the "flasher warning of the approaching train was on and that the crossing gate was lowered." *Id.* at 699. It was also uncontested that Hamilton, having a wide angle view of the train and the tracks, approached two other vehicles stopped in front of the closed gate in front of the tracks. *Id.* At that time, "Hamilton stopped briefly, then crossed the center line, pulling into the approaching lane of traffic, and drove past the two cars and around the gates." *Id.* "Hamilton then passed over the siding track and proceeded to the second track where he collided with the Santa Fe switch engine on the mainline." *Id.*

The Court noted that "[t]he general rule is that 'the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent and efficient cause which was neither anticipated nor reasonably foreseeable.' " *Hamilton,* 852 P.2d at 700, citing *Thompson v. Presbyterian Hospital, Inc.,* 1982 OK 87, 652 P.2d 260, 263-64. "The Court has consistently held that a vehicle nearing a railroad crossing must yield the right-of-way to an approaching train, and the operator of the train can assume the vehicle will obey the law." *Id.* (Internal citations omitted) The Court held that because the railroad could have expected Hamilton to obey the law and not attempt to cross the tracks in disregard of the warnings, Hamilton was negligent *per se* and summary judgment in favor of the railroad was appropriate. *Id.*

Although the Defendant argues this case is analogous to *Hamilton*, they are factually distinct. In *Hamilton*, the Plaintiff drove around clearly marked gates and barriers into the pathway of a clearly visible train. Such is not the case here. There are no facts to suggest Mrs. Cornwell drove around flashing lights and gates, or ignored other stopped drivers while continuing to move into the pathway of the train. Further, the facts necessary to make a determination of liability under 47 O.S. §11-701(A) in this case are in dispute creating a fact question for the jury. As was <u>not</u> the case in

*Hamilton*, in this case there is a factual dispute as to whether Mrs. Cornwell was given notice of the train's approach by way of the sounding of the horn/whistle, or whether she saw the train as she approached the tracks in light of the various obstructions the Plaintiff claims kept her from being able to see the train. Since there were no lights or gates which came down to signal Mrs. Cornwell that the train was approaching, whether the train's horn sounded or whether an obstruction kept the train from being visible are essential facts in determining liability under 47 O.S. §11-701(A). This Court is not finding that the lack of lights or gates can be argued to be negligence on the part of the railroad; however, under 47 O.S. §11-701(A), there must have been "a clearly visible electric or mechanical signal device" which "gives warning of the **immediate approach of a railroad train**" or "a crossing gate is lowered or when a human flagman" which "gives or continues to give a signal of the approach or passage of a railroad train." 47 O.S. §11-701(A) (Emphasis added) The Defendant argues Mr. Cornwell should be held negligent *per se* under this statute for failing to stop after seeing the reflectorized cross bucks which warn of train tracks, however, cross bucks do not fall under these categories as they do not give an electronic or mechanic signal that warns that a train is immediately approaching.[1]

The Defendant also cites 47 O.S. §801(E) and argues the Plaintiff was negligent *per se* in violation of this statute. This statute states in pertinent part:

> A. Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic,

---

[1] The Defendant also cites *Akin v. Missouri Pac. R.R. Co.*, 1998 OK 102, 977 P.2d 1040, 1056. This case, like *Hamilton* is factually distinguishable in that there was not factual dispute that the train was blowing its horn, the headlights of the train were on, there were no obstructions to the view of the train and that the flashing lights of the grade warning device were flashing and could be seen by a person five or six blocks away.

7

>    surface and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed greater than will permit the driver to bring it to a stop within the assured clear distance ahead.
>
>    . . .
>    E.    The driver of every vehicle shall, consistent with the requirements of subsection A of this section, drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hillcrest, when driving upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic, or by reason of weather or highway conditions.

The Defendant, has failed to present sufficient evidence that Mrs. Cornwell was driving at an excessive rate of speed in "approaching and crossing" the "railway grade crossing" to allow this Court to make this finding as a matter of law.  The Defendant argues only that  Mrs. Cornwell should have stopped at the crossing to allow for the train to pass, or that if she did accelerate through the crossing to try to "beat the train" this is a violation of the statute.  The Plaintiff in his briefing at one point states Mrs. Cornwell accelerated to beat the train, but then retracts that statement. Whether Mrs. Cornwell's speed was appropriate in light of the circumstances presented at this railway crossing is an issue of fact to be left to a jury.

This Court finds there are questions of fact to be presented to a jury regarding whether the Mrs. Cornwell violated the statutes raised, and as such, Defendant's Motion for Summary Judgment as to Plaintiff's Negligence *Per Se* claim is **DENIED**.

## II.    PLAINTIFF'S CLAIM THAT UNION PACIFIC RAILROAD IS LIABLE FOR FAILING TO SOUND ITS HORN

The Plaintiff is pursuing a cause of action against Defendant claiming the railroad failed to comply with federal regulations in failing to sound the train's horn as it approached the railroad crossing or within the required distance from the intersection.  The Defendant claims it is entitled

to summary judgment on this claim as no reasonable jury, in light of the evidence would believe that the horn did not sound.

Pursuant to 49 C.F.R. 222.21 and 66 O.S. §126 the horn/whistle on a locomotive must be sounded when the lead car of the locomotive is approaching an intersection. Daily inspections are required for locomotives pursuant to 49 C.F.R. 229.21, and locomotives must be operated in a condition that is "safe to operate without unnecessary danger of personal injury." 49 U.S.C. §20701.

The parties have submitted a video recording of the subject accident which was retrieved from the locomotive's Track Image Recorder. The Plaintiff contends the video evidences the fact that the horn was not sounded because in viewing the video sounds of the train going over the tracks can be heard, as well as the train applying the breaks and the sounds from the actual collision; however, there is no sound of the horn picked up on the video. This Court has reviewed the video submitted by the parties under seal, and agrees that the horn cannot be heard in the video. The Defendant contends the horn cannot be heard on the video because of the placement of the microphone and further contends numerous eye witnesses who testified they heard the horn sound before the collision as well as the information from the Data Event Recorder which shows the horn blew is sufficient to find that no reasonable jury could conclude that the horn did not blow. This Court disagrees.

Although one of the Plaintiff's witnesses waivers somewhat in his determination of whether the horn blew, the Plaintiff presents testimony different from the witnesses presented by the Defendant, and the determination of credibility of witnesses is one to be made by the jury. In addition, the video which shows the train in motion and allows the viewer to hear numerous other sounds but not that of the horn is sufficient to allow a reasonable juror to determine the horn did not

blow prior to the collision. The Plaintiff contends this evidence establishes either that the engineer did not activate the horn, that the horn activation system was inoperable, or that the horn sounded but did not produce the minimum sound level required by law.

In light of this evidence, the Court finds a material issue of fact is in dispute. Therefore, Defendant's Motion for Summary Judgment regarding whether the horn sounded is **DENIED**.

### III. PLAINTIFF'S CLAIM THAT UNION PACIFIC RAILROAD MAINTAINED AN OBSTRUCTION IN SIGHT TRIANGLE OF THE CROSSING

The "sight triangle" as defined by the Oklahoma Corporation Commission is a triangle "which would have a beginning point from the center point of the main track and the center point of the grade crossing extending along the center of the street of the roadway approach for a distance of 50 feet or to the railroad right-of-way property line, whichever is less, then extend at an angle until arriving at a point on the center of the main track 250 feet from the original beginning point." OAC 165:32-1-2. It is undisputed that on the day of the collision a signal box was present in the sight triangle. The Plaintiff contends that the signal box was an obstruction in violation of OAC 165:32-1-11. This regulation states:

> **165:32-1-11. Weed and trash abatement**
> (b)   Railroads or other persons, firms or corporations operating a railroad company are responsible for the reasonable abatement at public crossings of tree, shrubs and other obstructions within or encroaching within a sight triangle. Upon request of the Commission, the sight triangle may be extended to a sight rectangle if it is determined necessary for proper sight distance at the crossing. Devices, signs or structures necessary for the operation of the railroad and railroad equipment in the process of loading, unloading or switching are not considered obstructions.
> (c)   This responsibility exists as long as the railroad or other person, firm, or corporation operating as a railroad company, is the legal owner of the right-of-way, even if operations have ceased, and/or the tracks and facilities have been removed.

10

> Abatement must begin upon notification received from the Commission.

The Defendant argues that the signal box, which is used to supply power to the lights and gates which were being installed, is covered as a "device[], sign[] or structure[] necessary for the operation of the railroad and railroad equipment in the process of loading, unloading or switching" and therefore, not considered and obstruction. This Court agrees. The Plaintiff contends that the lights and gates were not yet installed, therefore, the signal box was not necessary to the operation of the railroad. However, as the railroad points out, it would be dangerous to install the lights and gates before installing the signal box. If the lights and gates were installed first, the public would be relying on warning devices which did not work because there was no power source. This Court reads this provision of the Oklahoma Corporation Commission's regulation to be broad in that allows for the inclusion of a wide range of "devices, signs or structures." Under this language, this Court finds, the signal house is a device, which is necessary to the operation of the railroad and railroad equipment in the process of loading, unloading and switching and therefore, is not considered and obstruction under this regulation. As such, the Plaintiff is precluded from arguing the Defendant, Union Pacific Railroad, was negligent or should be liable in this case for placing the signal house within the sight triangle.

The Plaintiff raises for the first time in his surreply that obstructions other than the signal box such as tress and a "crane" also caused an obstruction to the Mrs. Cornwell's view. However, Plaintiff has provided no evidence to show that the trees or the "crane" were locate within the sight triangle. The Defendant filed a supplement to its motion for summary judgment showing the trees the Plaintiff references were actually 379 feet from the edge of the crossing, well outside the sight triangle, and the "crane" the Plaintiff references was actually a work truck, also outside the sight

triangle. [Doc. No. 178 and 178-2] The railroad's duty is to keep the crossing free of "tree[s], shrubs and other obstructions within or encroaching within a **sight triangle**." (Emphasis added) There has been no evidence presented that the "crane" or the trees complained of by the Plaintiff are in violation of this regulation. [2]

As such, the Defendant's Motion for Summary Judgment as to Plaintiff claims regarding liability for failing to remove obstruction is **GRANTED**.

## IV.   SPEED OF THE TRAIN

The Defendant in its original Summary Judgment Motion attached an affidavit from the Manager of Track Maintenance for Union Pacific Railroad, Tom Cooper, stating the track at issue is classified as a Class 3 track and as such has a maximum allowable speed of 40 mph. On April 12, 2010, the Defendant filed a Motion to Substitute the Affidavit of Tom Cooper with a corrected Affidavit stating the statement in his initial Affidavit was in error and the track is in fact a Class 4 track with a maximum speed limit of 60 mph. It is undisputed that at the time of this accident the train at issue was traveling at a speed less than 60 mph. Since speed limits for different types of trains and tracks are set by federal regulations, and there is no argument here that the train at issue was within the federally set speed limit, any claims regarding excessive speed is preempted by federal law. *See Murrell v. Union Pac. R.R. Co.*, 544 F.Supp.2d 1138 (D.Or. 2008); *CSX Transport. Inc., v. Easterwood*, 507 U.S. 658 (1993)

For these reasons, Union Pacific Railroad's Motion for Summary Judgment is **GRANTED**

---

[2] Although this Court has granted summary judgment on the issue of the Plaintiffs claims regarding the railroad's failure to remove obstructions from the sight triangle, this Court recognizes that evidence regarding whether Mrs. Cornwell's view of the train was obstructed may be relevant under the defense of negligence *per se* since an element of 47 O.S. §11-701(a) is whether the "approaching railroad train is plainly visible."

as Plaintiff's claims regarding the speed of the train.

## V.     PUNITIVE DAMAGES

The Defendant contends there is insufficient evidence to show the Defendant acted in reckless disregard for the rights of other or with "evil intent" and as such, summary judgment should be granted for the Defendant on the issue of punitive damages [Doc. No. 264]. In order to obtain punitive damages the Plaintiff must show, by clear and convincing evidence, that the "conduct of the Defendant was in reckless disregard of another's rights." OUJI-CIV Instruction No. 5.6. A Defendant acts in reckless disregard if it was "either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to others." *Id*. "In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person." *Id*. The Plaintiff can also obtain punitive damages by showing malice which involves either "hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse." *Id.*

The Defendant contends there is no evidence in this case which would justify punitive damages therefore, it should not be allowed to be presented to the jury. The Plaintiff claims that if the jury finds the Defendant knowingly failed to operate the horn in violation of federal regulations thereby placing the public at serious risk of death or injury, or knew that the horn was not emitting a sound compliant with the decibel levels set by federal regulation but continued to operate the train, punitive damages would be appropriate. This Court agrees. If the evidence at trial supports a finding that the Defendant operated the train and failed to blow the horn as required by law or failed to conduct the required maintenance of the horn to ensure the sound levels were such that it could

13

be heard, it would be appropriate for the jury to determine whether punitive damages are appropriate. At this time the Court **DENIES** the Defendant's Motion for Summary Judgment regarding the issue of punitive damages **WITHOUT PREJUDICE** to be re-urged after the presentation of the evidence at trial.

## CONCLUSION

For the foregoing reasons, this Court **DENIES** Defendant's Motion for Summary Judgment as to the issues of negligence *per se*, **DENIES** Defendant's Motion as to Plaintiff's claim that Union Pacific Railroad is liable for failing to sound its horn in compliance with federal law, **GRANTS** the Defendant's Motion as to the Plaintiff's claim that Union Pacific Railroad maintained an obstruction in the sight triangle of the crossing, **GRANTS** Defendant's Motion as to the Plaintiff's claims of excessive speed of the train, and **DENIES** Defendant's motion as to the issue of punitive damages **WITHOUT PREJUDICE** to be re-urged after the conclusion of the evidence at trial.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma