**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DENNIS CORNWELL, Individually and as Personal Representative of the Estate of Renia A. Cornwell, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 08-CV-638-JHP |
| UNION PACIFIC RAILROAD, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court are the Defendant's *Daubert* Motion Regarding Robert Painter [Doc. No. 171], Plaintiff's Response in Opposition [Doc. No. 212], Defendant's Reply [Doc. No. 215] and Defendant's *Daubert* Motion Regarding Robert Schubert [Doc. No. 174], Plaintiff's Response in Opposition [Doc. No. 211], and Defendant's Reply [Doc. No. 214]. Also before the Court is Defendant's *Daubert* Motion Regarding Michael Keane [Doc. No. 176], Plaintiff's Response in Opposition [Doc. No. 208], Defendant's Reply [Doc. No. 218]. For the reasons set forth below Defendant's *Daubert* Motion Regarding Robert Schubert [Doc. No. 174] is **GRANTED**, Defendant's *Daubert* Motion Regarding Robert Painter [Doc. No. 171] is **GRANTED**, and Defendant's *Daubert* Motion Regarding Michael Keane [Doc. No. 176] is **DENIED**.

"It is now well established that Fed.R.Evid. 702 imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts. *Id*.

at 592-93. The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)(quoting *Daubert,* 509 U.S. at 592).

To be reliable under *Daubert,* an expert's scientific testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science" based on actual knowledge, not "subjective belief or unsupported speculation." 509 U.S. at 590. In other words, "an inference or assertion must be derived by the scientific method ... [and] must be supported by appropriate validation – i.e. 'good grounds,' based on what is known." *Id.* "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community." *Mitchell v. Gencorp Inc.,* 165 F.3d 778, 781 (10th Cir. 1999). Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. *Id.*

To assist in the assessment of reliability, the Supreme Court has listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Daubert,* 509 U.S. at 593-94. As noted, the list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kuhmo Tire,* 526 U.S. at 150. ("[W]e

can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* ... Too much depends upon the particular circumstances of the particular case at issue.").

Generally, the district court should focus on an expert's methodology rather than the conclusions it generates. *Daubert,* 509 U.S. at 595. However, an expert's conclusions are not immune from scrutiny: "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."). Under *Daubert*, "any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell,* 165 F.3d at 782 (quoting *In re Paoli RR. Yard PCB Litigation,* 35 F.3d 717, 745 (3d Cir. 1994). It is critical that the district court determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Id. at 783 (quoting Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 318 (7th Cir. 1996).* Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Khumo Tire, 526 U.S. at 152.*

## I.   ROBERT SCHUBERT

There is some confusion as to whether Robert Schubert is offered by the Plaintiff as an expert witness in this case. The Defendant filed a *Daubert* motion seeking to exclude his testimony

based on the report Schubert submitted, and the investigation he completed. The Defendant contends the investigation and report appear to be that of an accident reconstructionst, but the response by the Plaintiff denies Schubert is employed by the Plaintiff as an accident reconstructionist. Out of an abundance of caution, and based on the information presented, this Court will treat Schubert as a potential expert and rule on his report and suggested testimony assuming the Plaintiff intends to call him as an expert witness as he has no personal knowledge of the incident which is the subject of this lawsuit and therefore, would not meet the requirements of a lay witness.

The Defendant initially contends Schubert's testimony should be stricken because the investigation, upon which his opinions are based, was conducted unlawfully. The Defendant argues that by entering onto the Union Pacific Railroad tracks and accompanying right-of-way, which are the property of Union Pacific Railroad, without the railroad's permission, Schubert trespassed placing both himself and others in danger in order to conduct this investigation. This Court agrees that Schubert's investigation of the railway was committed unlawfully as he did not have the railroad's permission to enter the railroad tracks and adjoining right-of-way. *See Frank v. Mayberry*, 1999 OK 63, ¶19, 985 P.2d 773, 776 ("[P]hysical invasion of the property of another" constitutes trespass in Oklahoma.). Such permission Could have been easily sought under the Federal Rules of Civil Procedure. (*See* Fed.R.Civ.P. 34 which allows for inspection of property)

Other Courts have addressed this issue and held that "a party is not entitled to trespass upon another party's property to conduct an investigation or inspection without first notifying the other party by properly serving a request to produce or filing a motion to produce. . ." *Schneck v. Ebby*

*Halliday Real Estate Inc.*, 803 S.W.2d. 361, 372 (Tx. App. – Ft. Worth. 1990)[1] The *Schneck* Court held, the "law does not condone such an unauthorized inspection when the inspection in all probability could have been obtained through lawful means by making application to the court for an inspection order. . ." Based on the party's failure to comply with the rules of discovery in completing the expert's investigation, the Court in *Schneck* struck the expert's report and refused to allow him to testify. Other Courts have also held evidence obtained unlawfully should be excluded. *See Day and Zimmerman, Inc., v. Strickland,* 483 S.W.2d 541 (Texas 1972); *Williams v. Williams*, 221 N.E.2d 622 (Ohio 1966); *Ryan v. Vegiard*, 1993 WL 128570 (Conn. Super. April 15, 1993)(unpublished). Although this Court recognizes the *Schneck* decision is not binding, this Court finds it to be a well reasoned opinion and agrees with the Court's holdings. This Court finds that because Schubert based his opinions and his findings on an unlawfully conducted investigation , his opinion and the results of his investigation should be excluded. Schubert's investigation could have easily been conducted by complying with the discovery rules and requesting the Defendant's permission to enter the property for purposes of an inspection. Instead, the Plaintiff and his expert chose to unlawfully enter the property putting themselves and others in harms way.

---

[1] The Court in *Schneck* relied based its decision on Rule 166b(2)(c) of the Texas Rules of Civil Procedure which states:

> A party may obtain a right of entry upon designated land or other property in the possession or control of a person upon whom a request or motion to produce is served when the designated land or other property is relevant to the subject matter in the action for the purposes of inspection and measuring, surveying, photographing, testing or operation thereon.

The text of this rule contains the same substantive requirements as Federal Rule of Civil Procedure 34 on which this Court has reliedin this case.

This Court further finds that, even if Schubert's investigation had been conducted lawfully, it would not meet the criteria set forth in *Daubert* sufficient to be presented to the jury. This Court finds the reconstruction completed by Schubert to be unreliable. Although Schubert's report makes note of the fact that Mrs. Cornwell was driving a 1998 Chevrolet Blazer, Schubert's reconstruction was done with a 2010 Chrysler Town and Country vehicle. There is no indication that Schubert made any attempt to ensure the locomotive used in his photos or reconstruction was the same type of locomotive involved in the accident before this Court. Because of this, Schubert's reconstruction was inherently flawed as it does not create an accurate representation of the scene. This Court is concerned about the validity and/or reliability of Schubert's investigation and/or conclusions based on his investigation using a different type of vehicle than the one the decedent was driving and a different locomotive than the one involved in the accident. As such, Defendant's *Daubert* Motion regarding Robert Schubert is **GRANTED**.

## II.   ROBERT PAINTER

Defendant's arguments regarding Plaintiff's accident reconstructionist, Robert Painter are essentially the same as were raised regarding Schubert. Painter also trespassed on the Union Pacific crossing in going out to the crossing and the right-of-way owned by Union Pacific Railroad without requesting permission from the railroad. Painter states in his report he went to the crossing on June 9 and 10, 2010, where he took photographs, made measurements, made videos, and inspected the property in order to create an accident reconstruction. For the same reasons set forth above this Court finds Painter's reconstruction of the scene should have been conducted by complying with the discovery rules and after requesting the Defendant's permission to enter the property for purposes of an inspection. Since the Plaintiff and his reconstructionists chose to conduct their investigation

through "the back door when there is provided a lawful method of entry through the front door" this Court finds it an appropriate remedy to refuse to allow the jury to hear the evidence, and any opinions formed from, the evidence unlawfully obtained. *Day and Zimmerman, Inc.*, 483 S.W.2d at 547.

Further, as with Schubert, this Court finds that even had Painter proceeded with his investigation lawfully, his opinions and methods do not comply with the requirements set forth in *Daubert*. There is no contention here that Painter is not qualified as an accident reconstructionist. His qualifications are clearly set forth in his curriculum vitae. [Doc. No. 157-6] The Defendant, however, challenges Painter's opinions and investigation in this case on the basis that they're unreliable and that Painter's conclusions are speculative.

Painter states the "clearly identifiable visual cues of the presence of the train are the lights on the front of the lead locomotive." [Doc. No. 171-2] Painter opines that once Mrs. Cornwell approached the train tracks the "visual cue" that the train was approaching, i.e., the light on the front of the train, was masked by the signal box, therefore, making it impossible for Mrs. Cornwell to identify the approaching train. However, the subject incident occurred during the day time in clear weather, so Painter's conclusion that the train's visual cue is the light on the front of the train fails to take into account any other visual cues available.

The Plaintiff, in his response, attached an additional declaration from Painter with photographs showing the light of the train being blocked by the signal house. [Doc. No. 212-2] In those photographs, the lead engine cannot be seen but, the numerous other rail cars are clearly visible. Painter fails to account for whether any of the additional cars could be seen in making his conclusion that "if the signal house had not been there, "Cornwell" would have had an opportunity

to see unit number two, and would be able to bring her vehicle to a stop." [Doc. No. 171-2]

Painter further opines as to whether the whistle on the train sounded. He states in his report "the Union Pacific Railroad Track Image Recorder does not indicate by sound that the horn was being used on approach to the railroad at-grad crossing." This information will not assist the jury as Painter has no specialized skill in reviewing Track Image Recorders, and has provided no additional information regarding the video which the jury cannot determine by simply reviewing the video.

Painter also states in his report:

> On approach of the rail grade crossing, when "Cornwell" looks to her left, she would not be able to see unit number two. (See item number five, video number 476) "Cornwell" then looks to her right and then forward, this would take approximately two and one half seconds. (See item number twenty) During that time unit number one would be slowing. After slowing, when "Cornwell" looks to her left again, all that she would see is the signal house to her left again.

The Defendant argues, and this Court agrees, that Painters findings that Cornwell looked to her right, and then to her left are all based on speculation. Since no one was in the car with Mrs. Cornwell, and there were no eye witnesses as to what Mrs. Cornwell did before entering the tracks, there is no way to no whether Mrs. Cornwell looked towards the train or was looking straight ahead. Expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir. 1995)(quotation omitted).

For these reasons, the *Daubert* Motion Regarding Robert Painter is hereby **GRANTED**.

### III. MICHAEL KEENE

There is no contention that the Plaintiff's purported expert, Michael Keene, is an acoustical

engineer and is qualified to provide expert testimony. His curriculum vitae shows he has a bachelor's degree in electrical engineering, a master's degree in music engineering technology, and is a licenced professional engineer in Florida and New York. [Doc. No. 157-3] The Defendant challenges Keane's ability to testify in this case by arguing that Keane improperly compared the Track Image Recorder video of the incident at issue to an unidentified video taken from Union Pacific's website which may not have been of a similar locomotive with similar equipment. While Keane does claim he analyzed in forming his opinions a video from Union Pacific's website, he states in a declaration submitted with the Plaintiff's Response, that he also analyzed the video taken from the exemplar run of the same locomotive involved in the incident involving Mrs. Cornwell where the horn could be heard in conducting his analysis. Keane states that although he conducted testing using the Fast Fourier Transform methodology to look at the frequency spectra of the video downloaded from Union Pacific's website, he did not rely on that video in any way as a comparison to the Track Image Recorder video of the subject collision.

The Defendant also contends Keane did not take certain essential evidence into consideration in making his opinions, therefore, his testimony is unreliable. The Defendant specifically contends Keane should have included as part of his opinion and report the testimony from the witnesses which state they heard the horn sound, as well as the police incident reports which indicate the horn was sounded and tested after the subject collision. However, Keane's sole duty was to perform acoustical analysis of the video itself to determine, based on certain frequency characteristics, whether the horn can be heard, and whether the failure to hear the horn is likely due to microphone saturation. Keane's declaration states "my analysis presupposes nothing about factual witnesses. It is not my job to evaluate witness testimony but instead to make scientific analysis which I have

9

done." [Doc. No. 208-2]

This Court finds that Keane's testimony may very well assist the trier of fact. *See Werth v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 648 (10th Cir. 1991)(under Fed.R.Civ.P. 702 the touchstone of admissibility is helpfulness to the trier of fact). For the reasons set forth above, Keane's testimony meets the test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence and the standards set forth by the United States Supreme Court in *Daubert* and *Kuhmo*. Defendant's *Daubert* Motion Regarding Michael Keane is therefore, **DENIED**.

## CONCLUSION

For the reasons set for herein, the Defendant's *Daubert* Motions as to Robert Schubert [Doc. No. 174] and Robert Painter [Doc. No. 171] and hereby **GRANTED**. Defendant's *Daubert* Motion Regarding Michael Keane [Doc. No. 176] is **DENIED**.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma